Rosa Esther Santiago, etc., Plaintiff and Appellee, v. Esveraldo Martínez Rodríguez, Defendant and Appellant.

No. 10476. Argued December 3, 1951.—Decided December 26, 1951.

E. *Martínez Avilés, Isaías M. Crespo,* and *Armindo A. Cadilla,* for appellant. *Nicolás Torres Marrero* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Based on the uninterrupted possession of the status of a natural child of the defendant Esveraldo Martínez Rodríguez, Rosa Esther Santiago, a minor, represented by her natural mother with *patria potestas*, brought an action of filiation against the former. The essential facts alleged in the complaint having been denied and the case heard on its merits, the District Court of Puerto Rico, Bayamón Section, entered a "Statement of Facts, Opinion and Judgment" granting the complaint, with costs and $300 as attorney's fees.

The lower court stated therein as follows:

"If we analyze the evidence adduced in the case we are now deciding, we must necessarily reach the conclusion that the minor's uninterrupted possession of the status of a natural child is justified by the acts of her father and of his family. From the evidence as a whole, the court arrives at the conclusion that this child is the offspring of sexual relations between Juana Santiago and Esveraldo Martínez Rodríguez; that at the moment of the child's conception and birth, both the father and the mother were single and had no impediment to marry each other; that this child has enjoyed what § 125 of the Civil Code calls 'the condition as of a natural child justified by acts of the father and of his family'. The father should not feel ashamed of the fact that the mother was a maid in his house. He did not think of that when he enjoyed her while she was a virgin. Others who have been great men in the world were of a humbler origin than Rosa Esther who is, in-

deed, the true image of her father. I am watching her now and I have studied well the features of the father, and that child is the image of her father. This does not determine the paternity, but it is presumptive evidence, as held by our Supreme Court. The court has given full credit to the testimony of the witnesses of the plaintiff, grants the complaint and declares the minor Rosa Esther Santiago an acknowledged natural daughter of Esveraldo Martínez Rodríguez, with all rights under the law. The Registrar of Vital Statistics of Vega Baja, where this child was born on March 11, 1939, is ordered to set forth that said child is an acknowledged natural child of Esveraldo Martínez Rodríguez. Since the defendant was rash, he is ordered to pay, not only the costs, but $300 as fees of plaintiff's attorney, as well. . . ."

 The defendant contends on appeal in the first place that said court erred in failing to comply with Rule 52 (a),[1] in that it did not set forth separately or in any other manner its findings of fact and conclusions of law. The main purpose of that Rule, which must be strictly complied with by trial judges, is none other than to enable this Court to determine whether or not the findings of fact and conclusions of law of the trial court were justified. *Santana v. García*, 71 P.R.R. 132; *Varela v. Fuentes*, 70 P.R.R. 838. Nevertheless, although in this case the provisions of said Rule were not strictly complied with, however, substantial compliance- was had therewith and, hence it is better not to remand the case to the trial court in order that it set forth such findings and conclusions. *Cáceres v. García*, 71 P.R.R. 378, 380. The first error assigned, therefore, was not committed.

 Nor the second. To enter judgment in open court is not an error, especially in cases like this in which the judge who rendered judgment was the same judge who sat at the

---

[1] Rule 52 (a) of the Rules of Civil Procedure, insofar as pertinent here, provides:
". . . In all actions the court shall set forth the facts as found by it and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; . . ."

trial, heard the witnesses testify and watched their gestures and demeanor. Since in his judgment the facts involved and the law applicable thereto were clear, it was undoubtedly unnecessary to wait for further study of the case to render later the proper judgment. See *Santiago* v. *González*, 71 P.R.R. 882.

█ During the course of the trial the mother of the plaintiff minor testified that while the defendant was studying in Louisiana she received several letters from him, that she kept them in a suitcase and left them in her house, together with other papers, when she went to work in another house, and that they got lost in her house. The defendant objected to her testifying in regard to the contents of the letters, alleging that the letters themselves were the best evidence. The lower court overruled the objection and allowed the testimony. We do not think that this action constituted an error. Pursuant to § 24 of the Law of Evidence —§ 386 of the Code of Civil Procedure, 1933 ed.—there can be evidence of the contents of a writing when the original has been lost or destroyed. If according to the testimony of the minor's mother those letters were lost, and she gave the reasons for their loss, the contents thereof were clearly admissible in evidence.

██ Appellant insists in the final assignments that the lower court committed manifest error in the weighing of the evidence and in rendering judgment granting the complaint. In order to determine whether or not these errors were committed, we must review, at least roughly, the evidence before the lower court. It was as follows:

*Juana Santiago*, the mother of the plaintiff minor, testified that sometime between 1935 and 1938 she lived in the house of defendant Esveraldo Martínez Rodríguez, because the latter's mother, Rosa Rodríguez, went to the house of the witness to ask the latter's mother "to let her hire one of us" and when Mrs. Rodríguez was told that they could not be hired, the witness went to live in his house "as one of

the family"; that about 1937 he made love to her and she accepted him, indulging in sexual intercourse whereby she became pregnant; that she was a girl, single and a maiden, and he was also single and a student in Vega Baja schools and later in a school in Río Piedras; that her relations with Esveraldo began in Vega Baja and when she became pregnant she told him, and Esveraldo asked her not to tell his parents because it might bring bad results, "and he told me that he was willing to marry me"; that afterwards she went to her parents' house and there gave birth to Rosa Esther; that thereafter she and the defendant saw each other often, about two or three times a week; that Esveraldo went to see her and her daughter and gave them small sums of money, because he was a student; that Rosa Esther was born on March 11, 1939, and by then he was studying in Puerto Rico; that after the child was born his parents kept it in their house for about ten months, in order to take care of and help the said child and that the witness agreed because she knew that the child would be better off with them, since she was very poor; that defendant's mother went to the house of the witness to ask her to give her the child, telling the witness that Esveraldo wanted her to have the child in order to acknowledge it; that the witness acquiesced and that during the aforesaid time that the minor lived with defendant's parents, defendant lived in the same house of his parents; that the child quit living in defendant's home because many months went by and the witness saw that the defendant neither married her nor acknowledged her child; that in Esveraldo's presence his mother asked her to leave the child with her so that she could give it an education and in order to acknowledge it and that when she demanded that the child be acknowledged they refused to give her the child, and she insisted, and when she decided to take away the child, Esveraldo's mother told her: "I can't bear to have you take away that granddaughter of mine!"; that afterwards the defendant went to Louisiana where he was studying and

from there he wrote her three or four letters; that she lived then in her house and upon leaving for Morovis to work in a house, she lost the letters; that in said letters he asked her to look after the child "because it was his daughter; that as soon as he came back he would come to me . . . And he also asked me to let his family have the child in their house, to leave the child with his mother, Mrs. Rosa Rodríguez . . . Since he was away, he asked me to leave the child with his mother, that he would acknowledge it"; that she wrote to the defendant insisting that he acknowledge the child; that when he returned from the United States the child was already living with her in her house; and that both the defendant and his mother gave her money for the child.

*María Sánchez* is Juana Santiago's foster mother and knows the parties in the suit, as well as Rosa Rodríguez. She remembers when Juana, who was a girl 13 years old, went to the house of Esveraldo's mother. Juana returned home in 1938; she arrived with dizzy and vomit spells; she was pregnant. Esveraldo went to see her at their house, both when she was pregnant and after childbirth. He saw Juana and the child; he took the latter in his arms, fondled and kissed it and told Juana not to worry. After Juana gave birth to the child, Esveraldo kept going to their house for about four months and later on went abroad. After Juana gave birth to the child, Esveraldo's mother went to their house about 10 or 12 times, weekly. Esveraldo always brought the child $2 or $3 and bought milk for it.

*Lydia Sierra* knows Juana Santiago, the defendant and the latter's mother. She accompanied Juana and the child one day when they visited Esveraldo's house; they went on Christmas of 1948, because Mr. Martínez, Esveraldo's brother, told them that Esveraldo would be home that day. Doña Rosa received them and they stayed in her house from one o'clock until 6 p. m.; doña Rosa asked Juana not to bring suit against her son, she asked her if she intended to send the child to school and was very affectionate to the minor.

*Aquino Ayala* has known Juana Santiago for 15 or 16 years. He knows Rosa Rodríguez by sight, because she went once to his house, in or about 1941 or 1942. Doña Rosa went there to give up Rosa Esther. Doña Rosa "did not want to be separated from the child because steps had already been taken towards talking with her son in order that he might acknowledge the child." She told this to Juana in his presence. When doña Rosa gave her the child, she also gave Juana some money and told her "take good care of my child."

*Angel Luis Cortés* was hired by Juana Santiago to go to Mrs. Martínez's house to get a crib. Mrs. Martínez gave him the crib, a bundle of clothes and a certain amount of money, which he delivered to Juana.

At the close of plaintiff's evidence, her attorney said: "Your Honor, we offer in evidence, to close our case, the likeness between the child and the defendant." And the Judge remarked: "I've seen them both."

Defendant's evidence consisted in the testimony of *Rosa Rodríguez*, Esveraldo's mother, of *Luz María Martínez* and of defendant himself. It tended to show that it is true that Juana Santiago worked in his house and that they did not regard her as one of the family, but as an employee; that it is true that the minor Rosa Esther lived in the house of the Martínez family, but it was because Juana Santiago told them that she had to be operated on and they took pity on the child; but that they told Juana that they could not keep it for long because the child walked too much, the house was high and it might fall down; and that they kept in their house other girls, as they did Rosa Esther, whom they treated as their daughters, just as Rosa Esther. *Esveraldo Martínez* himself testified that he is an agronomist and single; that he knows Juana Santiago, but has never had a love affair with her, that he has never met Rosa Esther and that it is likewise untrue that he wrote letters to Juana Santiago from the United States.

Proof of the possession of the status of a natural child of the defendant must be strong and convincing. *Vargas v. Jusino*, 71 P.R.R. 362, 367. In the case at bar it was. The evidence believed by the lower court, as we have seen, was in brief to the effect that while the minor's mother lived in the house of the defendant, the latter and she had intimate relations, as a result of which she became pregnant; that after the minor was born, the defendant called on the child frequently and was affectionate to her, fondling and kissing her, and when he left Puerto Rico he wrote to the child's mother telling her that he would acknowledge the child. It also tended to prove that defendant's mother visited the minor, was devoted to the child and took her to her house for about 8 or 10 months and looked after her as if she were her granddaughter. The uninterrupted possession of the status of a natural child of the defendant father, justified by acts of the latter and of his family, has been clearly shown. The lower court was warranted in thus deciding.

The judgment appealed from will be affirmed.